BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In re:
*American Medical Collection Agency, Inc.* | MDL No. 2904
*Customer Data Security Breach Litig.*

## PLAINTIFF GRAUBERGER'S INTERESTED PARTY RESPONSE IN SUPPORT OF CENTRALIZATION IN THE SOUTHERN DISTRICT OF NEW YORK

The first movant captioned this proposed MDL correctly: the alleged data breach happened at the Elsmford, New York offices of American Medical Collection Agency, not at Quest Diagnostics in New Jersey, nor at LabCorp in North Carolina, nor at Optum in Massachusetts, nor in the hometown or headquarters of any other AMCA client.

Rather, the root cause of this breach was AMCA's admitted delinquency, it was AMCA's admitted fault, and AMCA is at the center of the case. Therefore, the Panel should choose the district that is most appropriate to the nexus of AMCA's breach, and that location is plainly the Southern District of New York's White Plains Division. That is the district and division that embraces AMCA's place fo business.

### I. Transfer is assuredly appropriate.

Other parties will argue this point more vigorously, but it is obvious, so Plaintiff Grauberger will not belabor it: the Panel must transfer all of these actions—some 21 overlapping class actions as of this writing—to a single district in order to conserve judicial resources, promote efficient handling, and prevent inconsistent rulings. Plaintiff Grauberger has little to add to what the movants have already argued, except:

AMCA, now having filed bankruptcy, finds itself with a unique need to conserve its already limited resources. AMCA will likely not to have the funds to fully satisfy its liabilities. So

1

it would be wasteful to force AMCA to defend itself in multiple districts, where AMCA already has financial challenges dealing with this litigation. The Panel has expressly held that conserving the limited resources of parties is a reason to order transfer. *E.g.*, *In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 623 F. Supp. 634, 635 (J.P.M.L. 1985).

Transfer and centralization is the proper course for these actions.

## II. AMCA is indisputably the nexus of the case and an essential party to every action.

*Every* action before this Panel alleges that a data breach occurred within the offices of AMCA. *E.g.*, *Grauberger* Compl. ¶ 18; *Marler* Compl. ¶ 1; *Vieyra* Compl. ¶¶ 1, 3, 4, 31–36; *Fernandez/Valdes* Compl. ¶¶ 11–12. That breach is the key factual occurrence that triggered all of the subsequent litigation.

From discussions with counsel for other plaintiffs in some affected actions, Plaintiff Grauberger understands that some plaintiffs will attempt to avoid litigation with AMCA—now that AMCA has filed for bankruptcy protection. Those plaintiffs intend to do this by dismissing AMCA from the suits they have already filed, or by not suing AMCA in the first place. However, this gambit will not likely relieve these plaintiffs from participating in an MDL centered on AMCA.

The basis of *each* of these actions is that the data breach *inside AMCA's computer systems* caused the harm. AMCA was in possession of each plaintiff's protected health information under a contract that AMCA had with each of its clients (e.g., Quest, Optum, etc.). *E.g.*, *Vieyra* Compl. ¶¶ 7, 29, 30 (AMCA was a "contractor" to Quest).

It follows that AMCA is an essential party to each case—*whether or not AMCA is sued directly by the plaintiff*—because:

- In cases where both AMCA and one of its clients such as Quest are named defendants, it is very likely that the client would assert cross-claims against AMCA.

- Even in a case where AMCA is not named as a defendant, it is very likely that Quest or other client defendants would implead AMCA as a third-party defendant under Fed. R. Civ. P. 14.

- Even if AMCA is *not* made defendant by anyone in a given case, the breach happened inside AMCA, and inevitably discovery under Fed. R. Civ. P. 45 will be taken by either the plaintiff or the client defendant (again, *e.g.*, Quest).

Given the number and scope of affected actions, no realistic observer of this Panel could conclude that the Panel will not—at a minimum—form an MDL composed of those cases naming AMCA. And from there, it is simply impossible to conclude that cases *not* naming AMCA, such as "Quest-only" cases, should escape the AMCA MDL. (The fact that certain plaintiffs initially named AMCA in their race to the courthouse, but are trying to drop AMCA as a defendant now, is very revealing; AMCA was a key party for them, right up to the minute AMCA filed for bankruptcy.)

Centralizing all of the affected actions in one forum will provide the usual efficiencies in terms of costs, discovery, and judicial resources attendant with MDLs. Not centralizing all affected actions will waste the potential inherent in MDL proceedings, which AMCA in particular needs.

### III. Centralization in the Southern District of New York clearly is the most appropriate forum where AMCA is the center of the case and its headquarters lies in that district.

Given that centralization of all affected actions is essential, the real question is which district should host the MDL. Plainly, the Southern District of New York is the best district for this MDL, for the following reasons:

**Coordination with the bankruptcy proceedings.** AMCA sought bankruptcy protection in the Bankruptcy Court for the Southern District of New York. Centralization of the affected actions in the District Court for the Southern District of New York offers the unique possibility of closely coordinating these MDL cases with bankruptcy proceedings. No other district can offer this degree of coordination.

In particular, coordination could include joint hearings—the bankruptcy judge handling adversarial proceedings inside the AMCA bankruptcy on the same bench alongside the district judge handling cases in the MDL. The bankruptcy and district courts in the Southern District have a long track record of doing just that. *E.g., In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. 710 (Bankr. S.D.N.Y. 1991).

The Panel has previously determined that having civil suits in the same place as a lead defendant's bankruptcy was an advantage. *In re Worldcom, Inc., Sec. & "ERISA" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) ("the Southern District of New York is also the venue for other important WorldCom legal proceedings (including Worldcom's bankruptcy case . . .)"); *In re Gross Common Carrier, Inc., Freight Undercharge Claims Litig.*, 843 F. Supp. 1506 (J.P.M.L. 1994) ("related bankruptcy proceedings . . . are pending in that district"). Here, that precedent counsels in favor of the Southern District of New York.

Finally, to the extent that any federal procedural or substantive law might produce disparities between the bankruptcy court and district court proceedings, the fact that both courts are located in the same Circuit is a further small point in favor of the Southern District of New York.

**Cost savings for AMCA, which has a need to conserve its resources.** As discussed above, AMCA, which is likely insolvent, has a unique need to conserve resources. There has been no suggestion that Quest, LabCorp, or the other "client" defendants are in financial danger or at risk of capsizing due to AMCA's breach. Further, AMCA was a much smaller company which, according to public statements, never had more than about 125 employees. Thus, the "client" defendants (like Quest) will be much more capable of bearing the expense of litigating away from home. Trying these cases in Southern District of New York, and in particular its White Plains Division, will conserve AMCA's limited funds.

**Reasonably accessible.** While located in the opposite corner of the country to Plaintiff Grauberger, it cannot be denied that New York has excellent connectivity.

Other parties, second Movants Fernandez and Valdes, seek to establish a Quest-focused MDL in the District of New Jersey. Because the districts are adjacent, the Southern District of New York is a good compromise for those parties. They will not have a significant travel burden getting to White Plains, New York, which is nearby and certainly in the same time zone.

**The White Plains Division is uncongested and well-equipped to handle this MDL.** Both the district and the division are currently good places to host this MDL.

First, the Southern District of New York—while one of the nation's busiest districts—maintains excellent case disposition statistics. The median age of a case there is only 6.7 months, compared with 10.1 nationally.[1] The district also resolves cases prior to trial some months sooner than the median district in the nation. *Id.* While the time to final disposition in the event of a trial lags somewhat, this is likely reflective of the unique nature of some commercial cases and

---

[1] Administrative Office, Civil Federal Judicial Caseload Statistics (Mar. 31, 2018), *available at* https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2018/03/31.

5

international cases that are more complex than the average civil case. Further, data breach cases are rarely tried and usually result in settlement—particularly where, as here, the defendants all already agree that there has been a breach.

As for the White Plains Division, it has four excellent judges, any of whom would be equipped and experienced to host this MDL. There is just one MDL currently hosted in White Plains, *In re Mirena IUD Prods. Liab. Litig.*, MDL 2434, but after adverse *Daubert* rulings, there is only one single case left in that MDL.[2] Accordingly, the White Plains courthouse would be a reasonably uncongested place to host this MDL.

In conclusion, the Panel should centralize the affected actions in an MDL and send that MDL to the White Plains Division of the Southern District of New York.

Dated: June 25, 2019             Respectfully submitted,

                                 /s/ Abbas Kazerounian
                                 Abbas Kazerounian
                                 Jason A. Ibey.
                                 Nicholas Ryan Barthel
                                 KAZEROUNI LAW GROUP, APC
                                 245 Fischer Avenue, Suite D1
                                 Costa Mesa, CA 92626

                                 William F. Cash III
                                 Matthew D. Schultz
                                 Brenton J. Goodman
                                 LEVIN, PAPANTONIO, THOMAS,
                                 MITCHELL, RAFFERTY & PROCTOR, P.A.
                                 316 South Baylen Street, Suite 600
                                 Pensacola, FL 32502

---

[2] U.S. J.P.M.L., MDL Statistics Report, *available at*
https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-19-2019.pdf.