| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 2904 |

# DEFENDANTS OPTUM360, LLC AND OPTUM360 SERVICES, INC.'S RESPONSE TO MOTIONS TO TRANSFER AND CONSOLIDATE PRETRIAL PROCEEDINGS

Defendants Optum360, LLC and Optum360 Services, Inc. (collectively, "Optum") hereby submit their response to the pending Motions to Transfer and Consolidate Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 (the "JPML Petitions").[1] Optum agrees that transfer and consolidation of the cases in which it is named as a defendant (hereinafter, the "AMCA Data Breach Cases") is appropriate under Section 1407 and respectfully requests that the Judicial Panel on Multidistrict Litigation (the "JPML") transfer to the District of New Jersey before the Honorable Madeline Arleo. The District of New Jersey is the most appropriate transferee court for a number of reasons discussed more fully below. Specifically, the District of New Jersey is

---

[1] According to the JPML Docket, as of June 26, 2019, two motions for transfer and four responses have been filed. On June 4, 2019, Plaintiff Paula Worthey (*Worthey v. American Medical Collection Agency, Inc. et al.*, No. 7:19-cv-05210-NSR, S.D.N.Y.), filed her Motion for Transfer to the Southern District of New York. On June 7, 2019, Plaintiffs Jorge M. Fernandez, Jr. and Hector Valdes (*Fernandez v. American Medical Collection Agency, Inc. et al.*, No. 2:19-cv-13398-MCA-SCM, D.N.J.), filed their Motion for Transfer to the District of New Jersey. On June 13, 2019, Plaintiff Misty Marler (*Marler v. Quest Diagnostics, Inc. et al.*, No. 8:19-cv-01091-DOC-KES, C.D. Cal.) filed her Response to Motion to Transfer and Consolidate Pursuant to 28 U.S.C. § 1407 and argued that this action should be transferred to the Central District of California or, in the alternative, the Southern District of New York. On June 25, 2019, Plaintiff Emory Grauberger (*Grauberger v. Quest Diagnostics, Inc. et al.*, No. 3:19-cv-03102-SK, N.D. Cal.) filed his Response in Support of Centralization and argued that this action should be transferred to the Southern District of New York, White Plains Division. On June 26, 2019 (as of 6:00pm ET), two additional responses were filed. One was filed by seven plaintiffs and argues that this action should be transferred to the Southern District of New York, White Plains Division or, alternatively, to the District of Minnesota. The other was filed by Plaintiff Francis Carbonneau (*Carbonneau v. Quest Diagnostics, Inc. et al.*, No. 19-cv-13472-MCA-SCM, D.N.J.) and advocates for consolidation in the District of New Jersey.

the best venue for this MDL because it is: (i) the location in which many of the AMCA Data Breach Cases have been filed to date; (ii) home to Defendant Quest Diagnostics, Inc. ("Quest") and co-defendant BioReference Laboratories and as such a venue where witnesses and relevant documents may be found; (iii) convenient to the parties and witnesses; and (iv) well-equipped to preside over complex pretrial proceedings. For these reasons, Optum supports transfer and consolidation in the District of New Jersey.

## I. FACTUAL BACKGROUND

The JPML Petitions arise out of approximately two dozen putative class actions (to date) that have been filed in federal courts arising out of the recent data breach of a certain computer system of American Medical Collection Agency, Inc. ("AMCA"). That data breach involved an AMCA system that allegedly contained information of individuals who received services from Defendant Quest. All of the AMCA Data Breach Cases are based on the same central allegation: that AMCA, Quest, Optum, and others[2] failed to adequately safeguard the personal information of Quest's customers.

The plaintiffs in all of these actions assert some combination of the following claims: (1) negligence; (2) breach of implied contract; (3) breach of contract; (4) negligence per se; (5) unjust enrichment; (6) invasion of privacy; (7) breach of fiduciary duty; (8) breach of confidence; (9) deceit by concealment; and (10) wantonness. They also bring claims under a number of state consumer protection statutes. The plaintiffs purport to bring these claims on behalf of identical or overlapping classes, including nationwide and state-specific classes of patients whose personal information was allegedly maintained on the impacted AMCA system.

---

[2] Optum provides revenue cycle management services to Quest. Quest previously contracted with AMCA to handle collections on delinquent patient accounts. That contract was later assigned from Quest to Optum in connection with Optum's provision of revenue cycle management services.

The AMCA Data Breach Cases have been filed in nine federal district courts. The most common filing locations are the District of New Jersey and the Southern District of New York, which both have eight pending cases at present. The Central District of California has three pending cases. No other district has more than one case pending.

All of the actions are in the preliminary stages of litigation. The first action was filed on June 3, 2019, and the most recent action was filed on June 26, 2019. Defendants have not yet responded to any of the operative complaints. As of the date of this filing, Optum has not yet been served in 14 of the actions.

## II. ARGUMENT

**A. Consolidation and Coordination of Pretrial Proceedings Is Proper.**

Pursuant to 28 U.S.C. § 1407, the transfer of actions to a single jurisdiction for coordinated or consolidated pretrial proceedings is proper when the civil actions pending in various districts involve one or more common questions of fact, and transfer and consolidation "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). These statutory requirements are met in this case.

Although there are certain legal and factual differences among the cases that have been filed, all of these cases arise out of and seek to hold someone responsible for the AMCA data breach. The central allegation in every case is that the Defendants failed to safeguard the personal information of Quest's customers, leading to unauthorized access of that information. Many of the cases assert similar causes of action based on similar theories of liability. Accordingly, there are common questions of fact relevant to all of the AMCA Data Breach Cases, including questions regarding the data security procedures that were in place and the cause of the AMCA breach.

Consolidation will "eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." *In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). Absent consolidation, numerous overlapping discovery requests will be served, and the parties and the courts will be required to address the same legal issues multiple times. The Panel has determined that consolidation is necessary in precisely these circumstances in numerous recent data breach cases. *See, e.g.*, *In re Supervalu, Inc.*, 67 F. Supp. 3d 1377 (J.P.M.L. 2014) (consolidating data breach class actions to avoid duplicative discovery, prevent inconsistent rulings, and promote efficiency); *In re The Home Depot, Inc., Customer Data Security Breach Litig.*, 65 F. Supp. 3d 1398 (J.P.M.L. 2014); *In re Target Corp. Customer Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338 (J.P.M.L. 2014) (centralizing data breach litigation to prevent duplicative discovery and conserve the resources of the parties and the courts); *In re Schnuck Mkts., Inc. Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379 (J.P.M.L 2013); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 802 F. Supp. 2d 1370 (J.P.M.L. 2011); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 559 F. Supp. 2d 1405 (J.P.M.L. 2008); *In re TJX Cos. Customer Data Sec. Breach Litig.*, 493 F. Supp. 2d 1382 (J.P.M.L. 2007).

Moreover, all of the AMCA Data Breach Cases are class actions. The Panel has long recognized that overlapping and parallel class actions asserting similar claims for recovery are particularly well-suited for consolidation. *See, e.g.*, *In re Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375, 1376 (J.P.M.L. 2007) ("Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary."); *In re Chrysler Corp. Vehicle Prods. Liab. Litig.*, MDL No. 1239, 1998 LEXIS 15675, at *2

(J.P.M.L. Oct. 2, 1998) (ordering transfer where "the actions in this litigation involve common questions of fact concerning allegations by overlapping classes of defects in the paint of certain Chrysler vehicles that result in chipping, peeling, and discoloration of the paint finish"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("[T]ransfer of actions under § 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists."); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("Section 1407 centralization is especially important to ensure consistent treatment of the class action issues.").

Finally, the AMCA Data Breach Cases are ripe for transfer because they are in their infancy. The first cases were filed on June 3, 2019, and none of the Defendants has responded to any of the operative complaints. Accordingly, none of the cases to be transferred has progressed in any meaningful way, and the work of the transferee court will not duplicate the effort of any transferor court or create any inconsistent rulings on matters of substance.

**B. The District of New Jersey Is the Most Appropriate Venue for the Transfer of These Actions.**

In deciding the appropriate transferee court, the Panel has often considered: (i) where the majority of cases are pending; (ii) where a defendant's headquarters is located; (iii) where relevant documents and witnesses are located; (iv) whether the transferee district is easily accessible to parties and witnesses; and (v) whether the transferee court has the capacity to devote sufficient resources to complex consolidated proceedings. As discussed below, each of these factors favors consolidating pretrial proceedings before Judge Madeline Arleo in the District of New Jersey.

*1. No Other Court Has More Pending Cases than the District of New Jersey.*

The Panel has repeatedly found that the most appropriate transferee court is a district in which a large number of actions are pending. *See, e.g., In re WellPoint, Inc., Out-of-Network UCR*

*Rates Litig.*, 652 F. Supp. 2d 1375, 1376 (J.P.M.L. 2009) (transferring to district where three actions already pending); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 323 F. Supp. 2d 1381, 1383 (J.P.M.L. 2004) (noting that "a plurality of the actions is pending in the Central District of California"); *In re Phonometrics, Inc.*, 1996 LEXIS 21909 (J.P.M.L. Dec. 11, 1996) (transferring to district where majority of actions were pending); *In re Dow Chemical Co. Sarabond Prods. Liab. Litig.*, 650 F. Supp. 187, 189 (J.P.M.L. 1986) (transferring to district where six of fourteen actions already pending). Here, of the currently pending AMCA Data Breach Cases, eight were filed in the District of New Jersey. Accordingly, Section 1407's convenience requirement favors transferring the proceedings to the District of New Jersey. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002).[3]

> 2. *Many Relevant Documents and Witnesses Will Likely Be Located in the District of New Jersey.*

The presence of a defendant's corporate headquarters or other principal place of business in a forum militates strongly in favor of transfer to that forum because it "implies that relevant witnesses and documents are likely to be found there." *In re UICI "Association-Group Ins. Litig.*, 305 F. Supp. 1360, 1362 (J.P.M.L. 2004); *see also In re The Home Depot, Inc., Customer Data Security Breach Litig.*, 65 F. Supp. 3d at 1400 ("Home Depot is headquartered in the Northern District of Georgia. Thus, relevant documents and witnesses are likely located within the district."); *In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*, 598 F. Supp. 1366, 1368

---

[3] Quest and/or Optum have been named as defendants in the vast majority of lawsuits arising from the AMCA data breach. Apart from these lawsuits, there are a small number of lawsuits (six in total) that name only Laboratory Corporation of America Holdings ("LabCorp") and/or AMCA. Those actions are pending in a number of different districts, including three in the Middle District of North Carolina. This small number of actions does not alter the analysis that MDL consolidation of litigation arising out of the AMCA data breach should occur in the District of New Jersey. Indeed, in its response, it is Optum's understanding that LabCorp agrees that transfer and consolidation in the District of New Jersey is appropriate.

(J.P.M.L. 2009) (transferring to the Central District of California where "several defendants are headquartered . . . and accordingly pertinent documents and witnesses are likely located"); *In re DirecTV, Inc. Early Cancellation Fee Marketing and Sales Pracs. Litig.*, 655 F. Supp. 2d 1369, 1370-71 (J.P.M.L. 2009) ("DirecTV, Inc., is headquartered in that district and, therefore, relevant documents and witnesses are likely located there.").

Quest is a defendant in all of the AMCA Data Breach Cases and is headquartered in the District of New Jersey, as is BioReference. Quest and BioReference are likely to be in possession of relevant documents. Potentially relevant documents include documents concerning the negotiation of the original contract between Quest and AMCA and patient consent forms and records. In addition to documents, individuals with relevant information regarding Quest's relationship with AMCA and Quest's practices with regard to the collection and handling of patient information are also located at Quest. The location of Quest's and BioReference's headquarters and the anticipated evidence located in the District of New Jersey are therefore additional factors strongly favoring transfer to that district.

Moreover, AMCA's corporate headquarters are located in Elmsford, New York, which is 46 miles from the federal courthouse in Newark, New Jersey. This means that the United States District Court for the District of New Jersey has the power to compel the attendance of AMCA witnesses located in the Southern District of New York at court proceedings. *See* Fed. R. Civ. P. 45(c)(1)(A) (court may compel attendance at a hearing "within 100 miles of where the person resides, is employed, or regularly transacts business in person"). Moreover, the District of New Jersey is convenient for AMCA's witnesses.[4]

---

[4] While the Southern District of New York may be a convenient forum for AMCA's witnesses, the District's White Plains location would be inconvenient for all other witnesses and the other

7

### 3. The District of New Jersey Is Easily Accessible to Parties and Witnesses.

As discussed above, the District of New Jersey is home to Quest and is also easily accessible by AMCA witnesses. The federal courthouse in Newark is also only four miles away from Newark Liberty International Airport, which is a major airport with nonstop service to 162 different cities as of April 2019, the most recent month for which statistics are available. *See* http://www.panynj.gov/airports/pdf-traffic/EWR_APR_2019.pdf (last visited June 23, 2019). Thus, Newark is easily accessible for parties and witnesses scattered across the country.

### 4. Judge Madeline Arleo in the District of New Jersey Is Well-Suited to Preside Over Consolidated Proceedings.

In addition to being a convenient transferee district for parties and witnesses and being the location of many pending actions, the District of New Jersey also has the capacity to accommodate these proceedings. *See In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004) (deciding to "assign the litigation to a district i) in which half of the actions are pending; and ii) that is presently equipped with the resources likely required by the complex docket"). With a median time from filing to disposition of only 5.1 months in civil cases, transferring these cases to the District of New Jersey will ensure that the consolidated pretrial proceedings are resolved in a timely and expeditious manner. *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf.

Moreover, Judge Madeline Arleo is eminently qualified to preside over these actions. The experience and knowledge of a particular judge is one of the factors that the Panel has considered

---

factors tip the scales in favor of consolidation in the District of New Jersey. In fact, in the aftermath of AMCA's June 17, 2019 bankruptcy filing, at least two plaintiffs in the District of New Jersey—represented by two different sets of counsel—have already voluntarily dismissed AMCA as a defendant from cases in which it was originally named. *See Vieyra v. Quest Diagnostics Inc.*, No. 2:19-cv-13396-MCA, Doc. 5 (D.N.J. June 19, 2019); *Carbonneau v. Quest Diagnostics Inc.*, No. 19-cv-13472, Doc. 3 (D.N.J. June 19, 2019).

in determining the appropriate transferee forum. *See, e.g.*, *In re Factor VIII or IX Concentrate Blood Prod. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098, 1101 (J.P.M.L. 1992); *In re Data Gen. Corp. Antitrust Litig.*, 470 F. Supp. 855, 859 (J.P.M.L. 1979); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977); *In re Sugar Indus. Antitrust Litig.*, 437 F. Supp. 1204, 1208 (J.P.M.L. 1975); *In re Ampicillin Antitrust Litig.*, 315 F. Supp. 317, 319 (J.P.M.L. 1970). Judge Arleo, who is currently presiding over multiple AMCA Data Breach Cases, is extremely well-qualified to preside over this litigation.

Judge Arleo has served the District of New Jersey as a federal district judge for nearly five years. During that time, Judge Arleo has presided over numerous complex class actions. *See, e.g.*, *Dartell v. Tibet Pharms., Inc.*, No. 14-3620, 2016 U.S. Dist. LEXIS 21541 (D.N.J. Feb. 22, 2016) (certifying class in securities class action); *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820 (D.N.J. 2015) (granting motion for class certification in antitrust case). Judge Arleo has previous experience presiding over an MDL, which settled in 2018. *See In Re Azek Buidling Prods., Inc. Marketing and Sales Practices, Litig.*, MDL No. 2506 (D.N.J.). Moreover, though the Panel very recently assigned another MDL to Judge Arleo, *see In re Liquid Alumnium Sulfate Antitrust Litig.*, MDL No. 2687 (J.P.M.L. May 30, 2019), Judge Arleo has the resources necessary to manage the AMCA Data Breach Cases because Judge Arleo is assisted by a special master that has the authority to "oversee the schedule for completion of discovery and all discovery disputes and motions related thereto." ECF 723, *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 2:16-md-02687 (D.N.J. Mar. 13, 2018). In addition, that action appears to be winding down, as many of the parties have reached settlements. *See generally* Nadia Dreid, *Water Chemical Buyers Reach Deal In Price-Fix Suit*, Law360 (June 14, 2019), *available at*

9

https://www.law360.com/articles/1169469/water-chemical-buyers-reach-deal-in-price-fix-suit (last visited June 23, 2019) ("Consumers who say they were scammed into paying artificially high prices for a water treatment chemical told a New Jersey federal judge on Friday that they have reached a tentative deal with the last of the companies they have accused of being involved in the scheme.").[5] Accordingly, Judge Arleo would be an ideal transferee judge.

### C. The District of New Jersey Is a More Appropriate Venue Than the Other Requested Transferee Courts.

Two other districts have been proposed as potential transferee courts. Plaintiffs Paula Worthey and Emory Grauberger request that pretrial proceedings be consolidated in the Southern District of New York, and Plaintiff Misty Marler asks the Panel to transfer the AMCA Data Breach Cases to the Central District of California or, in the alternative, to the Southern District of New York. Neither of these districts is as appropriate for consolidation as the District of New Jersey.[6]

Worthey contends that this action should be transferred to Judge Roman in the Southern District of New York because several of the actions have been filed there, because AMCA maintains its principal place of business in the Southern District of New York, and because Judge Roman is an experienced and capable judge.[7] But as noted, many Plaintiffs have selected the District of New Jersey as the appropriate forum. Moreover, any related push by plaintiffs for

---

[5] Numerous federal judges are currently presiding over two MDLs. And six judges are presiding over more than two MDLs – Judge Breyer in the Northern District of California, Judge Thrash in the Northern District of Georgia, Judge Miller in the Northern District of Indiana, Judge Davis in the District of Minnesota, Judge Wolfson in the District of New Jersey, and Judge Goodwin in the Southern District of West Virginia.

[6] The District of Minnesota was proposed as an alternative forum in a Response filed earlier today. Optum does not agree that consolidation in the District of Minnesota is appropriate. For all of the reasons herein, the AMCA Data Breach Cases should be consolidated in the District of New Jersey.

[7] Worthey also contends, erroneously, that Quest's headquarters are in the Southern District of New York. As discussed above, Quest is headquartered in the District of New Jersey.

consolidation in the Southern District of New York before Judge Roman should be rejected. Although Judge Roman has more cases than any other Judge in that district, that result was manufactured by a spate of notices of related cases disclosing Judge Roman had a pending case but neglecting to mention that Judges Karas and Briccetti did as well.[8]

Moreover, the chambers of Judge Roman, the proposed transferee judge, are located in White Plains, New York, which is substantially less convenient for the parties and witnesses than the federal courthouse in Newark, New Jersey.[9] As discussed above, the federal courthouse in Newark is approximately four miles from Newark Liberty International Airport, which is a major international airport. By contrast, the closest major airport to the federal courthouse in White Plains is LaGuardia Airport, which is nearly twenty-five miles away.[10]

Plaintiff Emory Grauberger contends that these actions should be consolidated in the Southern District of New York, White Plains Division because AMCA has filed for bankruptcy and, according to Grauberger, consolidation in the Southern District of New York "offers the unique possibility of closely coordinating these MDL cases with bankruptcy proceedings" and because AMCA is likely insolvent and needs to conserve resources. But Grauberger fails to explain why a judge in the District of New Jersey would be unable to coordinate with the bankruptcy judge in New York. *In re Multidistrict Litig. Involving Banking Agmts. With Stirling Homex Corp.*, 388 F. Supp. 572, 572 (J.P.M.L. 1975) (rejecting argument that proceedings should be consolidated in the Western District of New York because bankruptcy proceedings were

---

[8] *See, e.g., Key v. AMCA et al.*, No. 7:19-cv-5536, Doc. 2 (S.D.N.Y.) (listing only *Worthey*, No. 7:19-cv-05210 (assigned to Judge Roman) as related); *Jilek v. Retrieval-Masters Creditors Bureau, Inc. et al.*, No. 7:19-cv-5552, Doc. 3 (S.D.N.Y.) (same); *Henry v. Am. Med. Collection Agency, Inc.*, No. 7:19-cv-05392, Doc. 3 (S.D.N.Y.) (same)
[9] Judge Roman has no prior MDL experience.
[10] While Westchester County Airport is close to White Plains, it has very few direct flights, and is therefore much less convenient than Newark Liberty International Airport.

pending there). If coordination with a future-filed adversary proceeding is desirable, this Panel can transfer the adversary proceeding to the District of New Jersey for consolidation in the MDL. *See In re Nat'l Arbitration Forum Trade Practices Litig.*, 729 F. Supp. 2d 1353, 1353 n.1 (J.P.M.L. Aug. 6, 2010) (recognizing that "[t]he Panel has previously transferred multiple adversary proceedings under Section 1407"). Moreover, AMCA is not named as a defendant in several of the later-filed AMCA Data Breach Cases. *See Webb v. Quest Diagnostics, Inc. et al.*, No. 1:19-cv-04157 (N.D. Ill.); *Johnston v. Quest Diagnostics, Inc.*, No. 2:19-cv-13957 (D.N.J.); *Benadom v. Quest Diagnostics, Inc.*, No. 2:19-cv-14037 (D.N.J). By contrast, Quest is named as a defendant in all of the AMCA Data Breach Cases. Thus, the Panel should give greater weight to the location of Quest's headquarters than to the location of AMCA's headquarters. Finally, Grauberger cannot credibly argue that it will be materially more expensive for AMCA to participate in consolidated pretrial proceedings in the District of New Jersey, less than 50 miles from its corporate headquarters.

Plaintiff Misty Marler's arguments that the Central District of California is an appropriate transferee court are even more unavailing. Marler contends that this case should be consolidated in the Central District of California because several of the named plaintiffs reside in California and, according to Marler, "the Central District of California is likely where the greatest number of victims reside." However, Marler overlooks the fact that none of the defendants in any of the actions is headquartered in California. Moreover, given the nature of the plaintiffs' allegations, the bulk of the document discovery is likely to be produced by the defendants. Most plaintiffs will have few, if any, relevant documents. Thus, the location of the plaintiffs is significantly less important than the location of the defendants. And it makes little sense to require Defendants and

their witnesses to incur the substantial burden of travel to the west coast when there are more convenient, appropriate transferee courts closer to their places of business.

Marler also argues that "[j]urists in the Central District of California also have extensive experience overseeing data breach litigation." But this is equally true of the District of New Jersey. For example, Judge Claire Cecchi is currently presiding over *In re Horizon Healthcare Services Data Breach Litig.*, No. 2:13-cv-07418 (D.N.J.), which is a consolidated class action involving victims of a data breach impacting Horizon Healthcare Services, Inc. Accordingly, to the extent that this is an important consideration to the Panel, it equally favors the District of New Jersey as the Central District of California.

Finally, the alternatives to establishing an MDL, including transfer pursuant to Section 1404, are not viable. There are more than twenty individual lawsuits to date spanning the country. Possible Section 1404 transfer motions would be extremely complex, inefficient, and unlikely to succeed given, among other things, the different mixes of defendants across the lawsuits and the lack of overlap among plaintiffs' counsel. For instance, one action names Quest, LabCorp, and BioReference along with AMCA; some actions name Quest and LabCorp; other actions name Quest alone. Section 1404 motions would require an individualized, case-by-case assessment, with the Section 1404 factors potentially pointing in different directions. Under these circumstances, the Panel routinely rejects Section 1404 transfer as a viable alternative to MDL consolidation. *See, e.g.*, *In re Uber*, 304 F. Supp. 3d at 1354 (rejecting informal coordination of 10 actions and seven tag-along actions pending in nine districts with fourteen groups of plaintiffs' counsel); *In re Equifax*, 289 F. Supp. 3d at 1325; *In re Schnuck Mkts., Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380-81 (J.P.M.L. 2013) (centralizing litigation and rejecting

Section 1404 transfer as preferable where a smaller number of affected customers in fewer states was at issue than here). As a result, there are no viable alternatives to MDL consolidation here.

### III. CONCLUSION

For all of the foregoing reasons, Optum supports Plaintiffs Jorge M. Fernandez, Jr., Hector Valdes, and Francis Carbonneau's efforts to transfer these actions to the District of New Jersey for consolidated pretrial proceedings because it will best serve the purposes of 28 U.S.C. § 1407 and the convenience of the parties.

Respectfully submitted, this 26th day of June, 2019.

>*/s/ Kristine McAlister Brown*
>Kristine McAlister Brown
>ALSTON & BIRD LLP
>1201 West Peachtree Street
>Atlanta, Georgia 30309
>Telephone: (404) 881-7000
>Facsimile: (404) 881-7777
>kristy.brown@alston.com
>
>*Counsel for Defendants Optum360, LLC and Optum360 Services, Inc.*