**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 2904 |

**PLAINTIFF JULIO ANTONIO PEREZ VIEYRA'S RESPONSE IN
PARTIAL SUPPORT OF MOTIONS FOR TRANSFER AND CENTRALIZATION**

Plaintiff Julio Antonio Perez Vieyra ("Plaintiff")[1] filed the first action in this proposed MDL. He respectfully submits this memorandum in partial support of the pending motions for transfer and centralization. *See* Dkt. 1; Dkt. 5. To the extent these motions seek to transfer and centralize litigation against Quest Diagnostics Incorporated and its wholly-owned subsidiary Optum360 Services, Inc. (collectively, "Quest"), Plaintiff agrees that this approach will best ensure the "just, speedy, and inexpensive" determination of this action. But inclusion of litigation against unrelated entities whose alleged wrongdoing is separate from Quest's would be inefficient because it would not "reduce litigation cost," nor "save the time and effort of the parties, the witnesses, and the courts." *Manual for Complex Litigation*, § 20.131 (4th ed. 2004).

## INTRODUCTION

Plaintiff brought his case on behalf of himself and 11,900,000 of Quest's other patients because he alleges that Quest failed to protect their confidential medical information. *See Vieyra v. Quest Diagnostics, Inc.*, Case No. 2:19-cv-13396-MCA-SCM (D. N.J.). These claims will rise and fall on Quest's conduct: what it knew, what it did to protect its customers' medical data and

---

[1] Plaintiff Vieyra is the plaintiff in *Vieyra v. Quest Diagnostics, Inc.*, Case No. 2:19-cv-13396-MCA-SCM (D.N.J.).

information, and whether it breached and duty or contractual obligation as a result of its loss of that data through its admitted data breach.

Other briefing urges the Court to include claims against another entity, Laboratory Corporation of America Holdings ("LabCorp"), in this MDL.  Those parties are mistaken because the cases against LabCorp share little in common with the cases against Quest.  Indeed, the LabCorp cases involve a different contract, different patients, different actions, different damages (e.g., Quest exposed patient health data, LabCorp did not), and different home state law.

The only connection between the two cases is that both Quest and LabCorp used the same collection agency:  American Medical Collection Agency ("AMCA"), which recently filed for Chapter 11 bankruptcy in the Southern District of New York.[2]  Hackers ultimately obtained information about both Quest's patients and LabCorp's patients from AMCA, but that does not make these cases related to each other because neither case is "about AMCA."  Rather, Plaintiffs who brought suit against Quest have a relationship with Quest and a case that will rise and fall on Quest's actions.

Plaintiff respectfully requests that any transfer and coordination, regardless of the scope, be to Judge Madeline Arleo of the District of New Jersey.  Judge Arleo is a sophisticated jurist who will ensure that the litigation proceeds efficiently, the District of New Jersey has deep expertise in data breach litigation, and the District of New Jersey is home to Quest, by far the most significant Defendant:  LabCorp involves almost 5 million fewer proposed class members than the Quest cases, *no* medical data, and AMCA is bankrupt.

---

[2] Some plaintiffs have sued AMCA as well, as Plaintiff Vieyra did originally.  Given that AMCA is now in bankruptcy, there is no helpful purpose to naming it as a defendant, which is why Plaintiff dismissed AMCA from his case.

**I.     FACTUAL BACKGROUND**

On June 3, 2019, Quest announced that unauthorized hackers gained access to 11.9 million of its patients' "financial information," "medical information," and "other personal information." *See* Quest Diagnostics Inc., Current Report, Form 8-K (June 3, 2019). Plaintiff alleges that Quest negligently allowed hackers to obtain this information, despite having a particularly high duty of care to its patients because it is a health care provider. In particular, Quest provided its patients' data to third-party AMCA, which apparently had essentially no data security. On June 4, 2019, Plaintiff filed suit in the District of New Jersey against Quest (including Optum) and AMCA.

After Quest's announcement, LabCorp revealed that some of its customers' data was *also* taken from AMCA. It does not appear that LabCorp exposed its customers' confidential medical information, however, radically distinguishing the scope of damages in that case from Quest.

On June 17, 2019, citing its liabilities and costs related to informing affected Quest and LabCorp customers, Retrieval-Master Creditors Bureau, Inc. d/b/a/ AMCA, filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. As part of that filing, AMCA submitted a declaration from its sole member and CEO, representing that AMCA had less than $2 million in liquidity and that the CEO had to obtain a secured loan from his personal funds of $2.5 million to simply mail affected individuals notice of the breach.

On June 19, 2019, Plaintiff voluntarily dismissed AMCA. *See* Fed. R. Civ. P. 41(a)(1)(A)(i). He did so both because of AMCA's essentially non-existent capitalization and because his primary claim is against Quest: the company to which he provided his medical information, the only company with whom any plaintiffs have a contractual relationship, and the company that owes him a duty of care has his medical provider.

There are currently 25 cases against Quest and seven against LabCorp. There are, moreover, five cases that name both Quest and LabCorp, although Plaintiff respectfully submits that the factual basis for naming both companies is unclear.

## II. LEGAL STANDARD

Transferring an action for coordination or consolidated pretrial proceedings is warranted under 28 U.S.C. § 1407(a) if, (1) the cases involve "one or more common questions of fact," (2) transfer and consolidation will further the "convenience of the parties and witnesses," and (3) transfer and coordination will "promote the just and efficient conduct of such actions." Centralization is not automatic; instead, it "should be the last solution after considered review of all other options." *In re: Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).

## III. ARGUMENT

### A. This case will turn overwhelmingly on Quest's conduct, and it would be inefficient to combine it with litigation about LabCorp's conduct.

This is a case about Quest's conduct. Plaintiff and the other members of the proposed class provided Quest with their confidential personal, financial, and medical information. A subset of them have contracts with Quest, and Plaintiff will show that Quest owes all proposed class members a duty of care as their medical provider. And the evidence will show that Quest was or was not appropriately careful with proposed class members' information.

#### 1. AMCA is the only link between Quest and LabCorp, and AMCA's role in this litigation is minor.

Some parties have indicated that they will assert that AMCA is also highly important to this litigation and that cases against LabCorp should be included in the Quest litigation because both of their patients' data was taken from AMCA. This argument is mistaken because AMCA's

role in both cases is minor, akin to the role a bankrupt safe manufacturer might play when assessing a claim for liability against a bank in the wake of a robbery.

In light of AMCA's bankruptcy, there is no good reason to include it in this litigation at all (or litigation against LabCorp) because all litigation against AMCA is stayed. *See* 11 U.S.C. § 362(a).[3] Discovery in the case will focus on what *Quest* knew and what *Quest* investigated about AMCA's data security practices. This is discovery that can be and should be obtained through Quest—either through depositions or documents it received from AMCA prior to and during the course of their relationship. Far from being the "glue" that holds Quest and LabCorp together, AMCA should be dismissed from this litigation entirely.

### 2. Adding cases about LabCorp to a Quest MDL would double the MDL's complexity without providing countervailing efficiencies.

Plaintiff respectfully stresses that the courts and parties will not gain any efficiency if cases about LabCorp are added to a Quest MDL. Plaintiffs bringing claims against LabCorp will have to prove what LabCorp knew, what LabCorp investigated, and whether LabCorp breached their duties or contracts with their customers. While these points are important to provide recompense to LabCorp customers, they are entirely distinct from what Quest customers will have to prove. The only overlapping discovery between the cases will involve very limited inquiry into AMCA's security (unlikely more than 2-3 depositions), all of which will be supervised by the bankruptcy court.

LabCorp's patients, moreover, stand in a very different factual position than Quest's patients. Quest exposed their patient's personal health information. This forms the basis for Plaintiff's cause of action under the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56, *et seq.* which provides for nominal damages of $1,000 per

---

[3] In any event, AMCA apparently has no money to pay claims.

disclosure.  LabCorp customers did not suffer this harm.  On the contrary, LabCorp touted the fact that it "provided no ordered test, laboratory results, or diagnostic information to AMCA."[4] The fact that Quest is proceeding under an entirely different statute, with a breach concerning information that is more private and more harmful, further suggests that including LabCorp would not lead to any efficiencies.  *See In re: Plasma Arc Techs. Inc., Due Diligence Litig.*, 856 F. Supp. 2d 1338, 1338 (Mem.) (J.P.M.L. 2012) (refusing to consolidate cases with "disparate causes of action").

In similar situations, the JPML has refused to transfer and consolidate cases.  For example, in *In re: LVNV Funding, LLC, Fair Debt Collection Practices Act (FDCPA) Litig.*, 96 F. Supp. 3d 1374 (Mem.) (J.P.M.L. 2015), the JPML refused to consolidate a case involving several defendants who were alleged to have received letters from the same collection agency, LVNV Funding, LLC, who owned debts from various other defendants.  The Court pointed to the fact that there is "limited overlap" between the putative classes given the number of defendants with the only common link being their debt collector.  *Id.* at 1375.  In the instant action, there is no link between Quest and LabCorp beyond their mutual debt collector, AMCA.  Combining the LabCorp cases with the Quest MDL would not lead to any efficiencies; indeed, it would cause the opposite to occur.

**IV.   LITIGATION AGAINST QUEST SHOULD PROCEED IN THE DISTRICT OF NEW JERSEY**

If the Court decides to transfer these actions, the District of New Jersey is the appropriate transferee venue, because:  (1) it is where Quest is located; (2) several related actions have been filed in New Jersey; and (3) Judge Madeline Arleo has substantial, demonstrated experience presiding over complex class actions.

---

[4]   Laboratory Corporation of America Holdings, Current Report, Form 8-K (June 4, 2019).

First, courts frequently transfer and consolidate cases where defendants are based. *See, e.g.*, *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322 (J.P.M.L. 2017) (transferring actions to the Northern District of Georgia, where the main defendant is headquartered as "relevant documents and witnesses thus likely will be found there.").[5] In this case, Quest is by far the most significant Defendant: (1) Quest is the only solvent company that exposed medical information; (2) Quest exposed far more of its patients' information than LabCorp did.

Second, nine of the 28 cases have already been filed in the District of New Jersey, including Plaintiff's case before Judge Arleo. *See In re: Air Crash Near Kirksville, Missouri, on Oct. 19, 2004*, 383 F. Supp. 2d 1382, 1383 (J.P.M.L. 2005). Nine cases have been filed in the Southern District of New York, presumably because AMCA is located there, but, as discussed above, AMCA should not be part of this case *at all*.

Third, Judge Arleo and the District of New Jersey have handled numerous complex MDL and non-MDL class actions, including data breach class actions. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, No. 13-1887 (ES), 2014 WL 2812049 (D.N.J. June 23, 2014); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 2:13-cv-07418 (D.N.J.). Judge Arleo, who presides over the first-filed District of New Jersey case (Plaintiff's case), has significant experience in presiding over complex class actions throughout her time as both a District Judge and previously

---

[5] *See also In re Vytorin/Zetia Mktg.*, 543 F Supp. 2d 1378 (J.P.M.L 2008) (centralizing cases in District of New Jersey because two of the defendants had their corporate headquarters in New Jersey, and thus, relevant discovery could be found there, and transfer to that district enjoyed support of defendants and several plaintiffs); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 559 F Supp. 2d 1405 (J.P.M.L 2008) (finding District of Maine was appropriate transferee district because, among other reasons, defendant had its headquarters in that district, and thus relevant documents and witnesses would be found there).

as a Magistrate Judge.  *See, e.g.*, *In re Thalomid & Revlimid Antitrust Litig.*, No. 14-cv-6997, 2018 WL 6580560 (D.N.J. Oct. 30, 2018).[6]

## V.     CONCLUSION

For all of the foregoing reasons, these actions should not be centralized, consolidated, or transferred.  Alternatively, if the Panel decides that transfer and centralization is warranted, then Plaintiff respectfully requests that the scheduled actions and any additional tag-along actions be transferred to the District of New Jersey for coordinated or consolidated pretrial proceedings.

---

[6] *See also, e.g.*, *Fried v. JPMorgan Chase & Co.*, No. 15-cv2512, 2017 WL 5951585 (D.N.J. Nov. 30, 2017); *Afzal v. BMW of N. Am., LLC*, No. 15-cv-8009, 2017 WL 3207232 (D.N.J. July 27, 2017); *City of Sterling Heights Gen. Emps. Ret. Sys. v. Prudential Fin., Inc.*, No. 12-cv-05275, 2016 WL 10570211 (D.N.J. Sept. 29, 2016); *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820 (D.N.J. 2015); and *Davitt v. Am. Honda Motor Co.*, No. 2:13-cv-00381, 2015 WL 13647198 (D.N.J. May 8, 2015).

Dated: June 26, 2019

Respectfully submitted.

*/s/ Jason L. Lichtman*
Jason L. Lichtman
Sean A. Petterson
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
(212) 355-9500
jlichtman@lchb.com
spetterson@lchb.com

Michael W. Sobol
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
(415) 956-1000
msobol@lchb.com

Adam J. Levitt
Amy E. Keller
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com

James E. Cecchi
Caroline F. Bartlett
**CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com

*Counsel for Plaintiff Julio Antonio Perez Vieyra*